UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br>Plaintiff, <br><br>v. <br><br>MARISOL LOPEZ PINON, <br><br>Defendant. | Case No. 5:13-cv-05559-BLF <br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br>Re: ECF No. 15 |

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") has moved for the entry of default judgment against defendant Marisol Lopez Pinon, owner of Martha's Hair Styling aka Belleza Latina's Salon. Plaintiff is requesting damages from Defendant's alleged unlawful interception and intentional exhibition of a boxing match at Defendant's hair salon. For the following reasons, the motion for default judgment is GRANTED.

**I.   BACKGROUND**

Plaintiff is a commercial distributor and licensor of sporting events. (Compl. ¶ 16, ECF 1) By contract, J & J secured the domestic commercial exhibition rights to broadcast the "*Manny Pacquiao and Juan Manuel Márquez, IV Welterweight Fight Program*" ("Program") telecast nationwide on Saturday, December 8, 2012. (*Id.* ¶ 14) The interstate transmission of the Program was made available only to J & J's customers. (*Id.* ¶ 15) In order to lawfully broadcast the Program, commercial entities were required to enter into a sublicensing agreement with J & J and pay the associated licensing fees. (*Id.*)

On December 8, 2012, investigator Gary Gravelyn observed the alleged unlawful exhibition of the Program at Defendant's commercial establishment, Martha's Hair Styling,

located in San Jose, California. (Decl. of Gary Gravelyn, at 1, ECF 15) Based on Gravelyn's observations, J & J alleges that Defendant intercepted the Program unlawfully, and intentionally exhibited it for the purpose of direct and/or indirect commercial advantage and/or private financial gain. (Compl. ¶ 18)

In his affidavit, Gravelyn states that Martha's Hair Styling has a capacity of approximately forty people. (Gravelyn Decl., at 1) Gravelyn observed one forty-inch television located on the counter opposite the entrance. (*Id*.) In the two minutes Gravelyn spent at Defendant's salon he conducted three head counts, counting approximately eleven, ten, and ten patrons, respectively, inside the establishment. (*Id*., at 1-2) Gravelyn's affidavit did not expressly describe how many of such patrons were watching the Program. Gravelyn testifies that the establishment has a satellite dish, but that he did not observe a cable box. (*Id*.)

It is unclear whether Defendant charged a fee to enter the establishment. Plaintiff has provided directly conflicting statements on this point. Plaintiff states: "In this instance, I would further request that the Court take notice that the instant pirate establishment obtained a cover charge from its patrons and to view the Program. Martha's Hair Styling a/k/a Belleza Latina's Salon did not require a cover charge to enter the establishment." (Pl.'s Mot. for Default J., at 11, ECF 15) Gravelyn testifies that he was not required to pay to enter the establishment. (Gravelyn Decl., at 1) The Court will take Gravelyn's affidavit as true and assume that no cover charge was required to enter the establishment. Although there are allegations that beer was consumed on the premises, there are no allegations of increased drink prices during the Program, or even that patrons paid Defendant for the drinks. (*Id*.) Plaintiff also does not allege that Defendant is a repeat offender of the alleged unlawful conduct.

Plaintiff filed suit against Defendant on December 2, 2013. (*See* Compl.) Plaintiff has alleged violations of the Federal Communications Act, 47 U.S.C. § 605, Cable and Television Consumer Protection Act 47 U.S.C. § 553, California Civil Code § 3336, and California Business

and Professions Code § 17200, *et. seq.*[1]  Defendant has failed to appear or otherwise respond to the Summons and Complaint within the time prescribed by the Federal Rules of Civil Procedure. On February 18, 2014 Plaintiff filed a request for entry of default judgment.  (Pl.'s Mot. for Entry of Default, at 1, ECF 11)  The Court Clerk entered default against Defendant on February 21, 2014.  (Entry of Default, at 1, ECF 12)

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter default judgment against a defendant who has failed to plead or otherwise defend an action.  "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion to enter default judgment.  These factors, known as the "*Eitel* factors," are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  When assessing these factors, and after entry of default, all factual allegations in the complaint are taken as true, except those with regard to damages.  *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

## III. DISCUSSION

### A. *Eitel* Factors

Six of the seven *Eitel* factors weigh in favor of default judgment.  In respect to the first factor of prejudice, denying Plaintiff's request for default judgment would be prejudicial because Plaintiff would be left without a remedy as a result of Defendant's refusal to litigate this action. Considering the merits of Plaintiff's substantive claims and the sufficiency of the complaint

---

[1] In the Plaintiff's Motion for Default Judgment, Plaintiff does not request relief in relation to the alleged violation of Section 17200, therefore no relief will be granted under this statute.

3

Case No. 5:13-cv-05559-BLF
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

together (factors two and three), Plaintiff's substantive claims appear meritorious, and its complaint is sufficiently pled. Plaintiff has stated the applicable laws pursuant to which the Court may provide relief and alleged that Defendant violated 47 U.S.C. §§ 605 and 553 and California Civil Code § 3336. The facts alleged concerning Defendant's activities appear to support the allegation that Defendant has violated one or more sections of the cited statutes.

As to the fifth and sixth *Eitel* factors, Defendant has failed to respond to this action despite Plaintiff's satisfaction of all notice requirements. (Summons Issued as to Marisol Lopez Pinon, at 1, Dec. 2, 2013, ECF 4; Proof of Service Summons and Compl., at 1, ECF 10) As such, there is no dispute of material fact because Defendant has not responded (factor five). There is also nothing in the record to indicate that Defendant's default is a result of excusable neglect (factor six). Finally, although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate. *J & J Sports Productions, Inc. v. Deleon*, No. 5:13–CV–02030, 2014 WL 121711, at *2 (N.D. Cal. Jan. 13, 2014). Therefore, this general policy is outweighed by the more specific considerations in this case, and the seventh *Eitel* factor also weighs in favor of default.

With respect to the sum of money at stake in this action (fourth factor), Plaintiff's request for maximum statutory damages weighs against granting default judgment, as the amount requested appears disproportionate to the harm alleged: a first time offender who did not charge an entrance fee and did not show the broadcast to a packed house. However, a disproportionate damages request is not enough on its own to bar default judgment, as it may be addressed by the Court in deciding what damages should be awarded, assuming that a default judgment is otherwise appropriate. *Joe Hand Promotions, Inc. v. Mujadidi*, No. C–11–5570, 2012 WL 3537036, at *3 (N.D. Cal. Aug. 14, 2012).

Accordingly, the Court GRANTS Plaintiff's Motion for Default Judgment.

**B.     Calculation of Damages**

Pursuant to 47 U.S.C. § 605(e)(3)(C)(i) Plaintiff has elected to request statutory damages. Plaintiff requests $10,000 in statutory damages under Section 605(e)(3)(C)(i)(II), and $100,000 in

4
Case No. 5:13-cv-05559-BLF
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

enhanced damages under Section 605(e)(3)(C)(ii).  (Mot., at 11, 14)  Plaintiff also seeks $2,200 in conversion damages under California Civil Code § 3336, the amount Defendant allegedly would have been required to pay had Defendant licensed the Program from Plaintiff.  (Mot., at 20)

### i. Statutory Damages

The Federal Communications Act, 47 U.S.C. §§ 605 *et. seq.*, prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming except through authorized channels.  Under Section 605(e)(3)(C)(i)(II), damages for a violation of the Act are set at a minimum of $1,000 and a maximum of $10,000.  Plaintiff requests the statutory maximum for Defendant's allegedly unauthorized interception of the Program.  (Mot., at 11)

Although Plaintiff has alleged that Defendant also violated 47 U.S.C. § 553, it does not request damages under this section, which provides a lower statutory award.  Therefore, only damages pursuant to Section 605 will be assessed.

Plaintiff admits that it cannot determine the precise means that the Defendant used to receive the Program unlawfully.  (Mot., at 8)  Plaintiff argues that it is "inherently reasonable" to allow recovery under Section 605 under such circumstances.  (*Id.*)  Plaintiff further states the only lawful way Defendant could have obtained the Program was by licensing it from J & J.  (Mot., at 9)  Since Defendant failed to do so, "Defendant must have undertaken specific wrongful actions to intercept and/or receive the broadcast the encrypted telecast."  (*Id.*)  Plaintiff asserts that due to Defendant's default, it should not be prejudiced and denied recovery of damages pursuant to Section 605.  (Mot., at 8)  The Court agrees.

Although Plaintiff states that other districts have awarded substantial awards in comparable cases, the Court finds the award of maximum statutory damages to be unjust.  In the instant case, Defendant is a first time offender, only had the Program displayed on one forty-inch television in a room that accommodates forty people and did not charge a cover fee.  (Gravelyn Decl., at 1)  There were at most eleven people in Martha's Hair Styling in the two minutes Gravelyn spent in the establishment although his affidavit does not state how many of those patrons were watching

1   the Program.  (*Id*.)  There are no allegations that Defendant either increased food or drink prices,

2   or even sold food or drink, during the exhibition of the Program or promoted itself by advertising

3   the Program.

4         Plaintiff's arguments are limited in its memorandum because it spends less time analyzing

5   the facts and violations of the defendant in this case and more time trying to showcase the larger

6   awards granted in other districts.  In light of the information presented and the discretion afforded

7   to the undersigned, the Court awards Plaintiff the statutory minimum of $1000 in damages under

8   Section 605(e)(3)(C)(i)(II).

9         **ii.   Enhanced Damages**

10        The Federal Communications Act also affords courts the discretion to award enhanced

11  damages up to $100,000 upon finding that the violation "was committed willfully and for the

12  purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C.

13  § 605(e)(3)(C)(ii).  The statute is conjunctive and therefore the Plaintiff must provide the Court

14  with sufficient evidence to support a finding that Defendant acted both willfully and for the

15  purpose of obtaining direct or indirect commercial advantage or private financial gain.

16        Plaintiff argues that it is "clearly established" that actions in cases such as these are

17  "willful."  (Mot., at 14)  Plaintiff would like the Court to agree with other district courts that have

18  inferred willfulness by reasoning that the unlawful interception of a satellite signal necessarily

19  involves the defendant taking an affirmative step, thus exhibiting willful conduct.  (Mot., at 14-15)

20  The Court agrees that Defendant's alleged unlawful activity was the result of a deliberate act.  *See*

21  *J & J Sports Productions, Inc. v. Garcia*, No. H–08–1675, 2009 WL 2567891, at *4 (S.D. Tex.

22  Aug. 14, 2009) ("The Defendant must have engaged in a deliberate act since 'signals do not

23  descramble spontaneously, nor do television sets connect themselves to cable distribution

24  systems.'").

25        The Court, however, is unpersuaded that Defendant has acted for the purposes of direct or

26  indirect commercial advantage.  Plaintiff would like the Court to make this inference but provides

27  no evidence in support other than citing to *Garden City Boxing Club, Inc. v. Batista* for the

28

proposition that "[a] defendant who intercepts signals and broadcasts programming without authorization in a place of business where certain events are shown to the public is generally held to have acted willfully and for purposes of commercial advantage." No. 05-CV-1044, 2007 WL 4276836, at *5 (E.D.N.Y. Nov. 30, 2007) (internal quotes omitted). What Plaintiff fails to mention is that the *Batista* court also took into account that Batista had been sued for theft of cable programming in at least one other action prior to the lawsuit. *See Batista*, No. 05-CV-1044, 2007 WL 4276836, at *6 (E.D.N.Y. Nov. 30, 2007). This supported the court's inference that the defendant "displayed the [Program] for commercial gain in order to attract customers or retain customers who would purchase defendants' products." *Id*. In the instant case Defendant fails to provide the Court with such evidence that would permit such an inference.

Even if enhanced damages were warranted, the statutory maximum would not be justified, despite Plaintiff's argument that nominal damages have proven insufficient to combat piracy. (Mot., at 19-20) The present claim does not appear to be sufficiently egregious to warrant maximum enhanced damages. In the instant case, Defendant is a first time offender, only had the Program displayed on one forty-inch television in a room that accommodates forty people and did not charge a cover fee. (Gravelyn Decl., at 1) There were at most eleven people in Martha's Hair Styling in the two minutes Gravelyn spent in the establishment although his affidavit does not state how many of those patrons were watching the Program. (*Id*.) There are no allegations that Defendant either increased food or drink prices during the exhibition of the Program or promoted itself by advertising the Program. It may very well be the case this action is enough of a deterrent for Defendant. The Court will not consider awarding enhanced damages until Defendant becomes a repeat offender or willfully and egregiously violates the Federal Communications Act.

For the foregoing reasons, the Court DENIES Plaintiff's request for enhanced damages.

### iii. Conversion

Plaintiff requests $2,200 in damages for conversion under California Civil Code § 3336. (Mot., at 20) The Ninth Circuit has held that a claim for conversion in California has three elements: "ownership or right to possession of property, wrongful disposition of the property right

and damages." *G.S. Rassmussen & Associates, Inc. v. Kalitta Flying Service Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Plaintiff has established that it secured the domestic commercial exhibition rights to broadcast the Program. (Compl. ¶ 14) Plaintiff has properly alleged that Defendant unlawfully exhibited the Program on December 8, 2012 and that Plaintiff suffered damages from being denied a license fee from Defendant. (Compl. ¶ 11) Therefore, the three elements are met.

California Civil Code § 3336 states that a plaintiff is entitled to the value of the property at the time of conversion. Here, Plaintiff states that $2,200 is the amount Defendant would have been required to pay Plaintiff had he lawfully licensed the Program. (Mot., at 20) The Court has no reason to question this asserted value. Accordingly, the Court awards $2,200, the value of the Program at the time of conversion.

### C.   Attorney's Fees and Costs

The Court has reviewed the Plaintiff's request for attorney's fees and costs. Plaintiff has requested $1,990.00 in attorney's fees and $1,110.00 in costs, totaling $3,100.00. (Decl. of Pl.'s Attorney's Fees and Costs, at 7)

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), the Court shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails. Here, Plaintiff has prevailed due to Defendant's default in the action. Attorney's fees will be limited to the work of attorneys and paralegals, therefore the $740 in fees requested for the administrative assistant is denied. An award of fees for time spent by an administrative assistant is not consistent with the practice in the Northern District of California. Such fees should be have been subsumed in firm overhead. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). The Court finds the hourly rates of $500 and $200 to be reasonable for an attorney and paralegal, respectively, of similar experience in the Northern District of California. The 1.70 hours devoted to this matter by Attorney Thomas P. Riley and the 2.0 hours by the paralegal also appear reasonable to the Court.[2]

---

[2] Plaintiff utilizes boilerplate filings for the various claims brought before the Court justifying the reduction in fees and costs. *See, e.g.*, *J & J Sports Productions, Inc. v. Penalver*, No. 13-cv-05551, ECF Nos. 1, 17, 21, 24, 28 (N.D. Cal. 2013) (Complaint and motion papers).

United States District Court
Northern District of California

The Court finds that costs should be limited to the complaint filing fee and the service of process charges. Thus, the request for investigative expenses of $625 is denied. Accordingly, the Court awards $1,735.00 in reasonable attorney's fees and costs.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's motion for default judgment is GRANTED. Plaintiff shall recover $1,000 in statutory damages, $2,200 in damages for conversion, and $1,735.00 in reasonable attorney's fees and costs. Plaintiff's request for enhanced damages is DENIED.

**IT IS SO ORDERED.**

Dated: July 18, 2014

BETH LABSON FREEMAN
United States District Judge